**Thomas W. SMITH, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

No. 84–2134.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1985.

Decided Feb. 3, 1986.

Charles T. Hall, Raleigh, N.C., for appellant.

R.A. Renfer, Jr. (Richard K. Willard, Asst. Atty. Gen., Samuel T. Currin, U.S. Atty., Donald A. Gonya, Asst. Gen. Counsel, Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, Debra Hollis, Atty., Office of Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., on brief), for appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

Thomas W. Smith appeals from a judgment of the United States District Court for the Eastern District of North Carolina affirming the decision of the Secretary of Health and Human Services ("Secretary"), which denied Smith's application for a period of disability and disability insurance benefits. Concluding that the Secretary's decision is deficient in a pivotal finding, we vacate the judgment of the district court and remand this case to that court with instructions to remand it to the Secretary for further proceedings consistent with this opinion.

## I.

### FACTS

Smith was the owner and operator of a small appliance store in Oriental, North Carolina. He was aided by his wife in handling the store and occasionally employed outside help. As a routine part of his business, Smith served as a television repairman, often requiring him to go to a customer's home, remove the television set, and haul it to his repair shop where he was required to lift it to his work table. Similarly, he delivered appliances such as re-

frigerators, which he would load and unload into a truck and carry with a dolly into homes. This work required heavy lifting,[1] given the reality that television sets weigh anywhere from 150 pounds to 300 pounds, as Smith testified, and that refrigerators weigh even more.

Smith was born on January 30, 1924, and completed one year of college. He suffered his first heart attack on August 30, 1981. After a few days in the hospital, he remained at home until he returned to work in October 1981. After about an hour and twenty minutes on the job, Smith had his second heart attack. Other than this brief period before his second heart attack, he has not worked in any business since his first attack. The record shows that he is able to drive his car "short distances"; that he goes to church "about twice a month"; and that he can mow the lawn with a riding mower if he rests periodically. While his business has ended, he still receives calls from customers regarding problems with their television sets. Basically, however, he sits or lies around the house, watches television, and has washed breakfast dishes "a couple of times" and "would probably do more if [his wife would] let him."

Smith was examined by three doctors after his second heart attack. Dr. Thomas W. Coffman, a physician with the Veterans Administration, stated his belief that Smith ultimately would be able to return to work at least part time but would have to avoid straining or lifting heavy objects. Dr. Andrew Tse, hired by the Secretary to examine Smith, reached a similar if not more guarded conclusion. He observed Smith's performance on a treadmill test. Based on this test, Dr. Tse stated that he considered Smith's condition to be within Class III of the New York Heart Association classification system, meaning that he would be comfortable at rest and that less than ordi-

---

**1.** Smith performed this work throughout the "past relevant work" period. *See* 20 C.F.R. § 404.1565(a) (relevant work period is fifteen years before onset of disability).

nary physical activity would cause severe symptoms.[2]

The claimant's family physician, Dr. George Nashick, submitted two reports. The first is dated January 25, 1982, and states that the claimant was suffering typical angina pectoris with minimal exertion. The second report, dated August 23, 1982, states Dr. Nashick's diagnosis of arteriosclerotic heart disease with a history of myocardial infarction and persistent angina pectoris and weakness upon exertion. His opinion was that Smith could not engage in any strenuous activity and that the claimant therefore could not continue doing the same work that he had been doing for the appliance business. No physician, however, expressed the opinion that Smith was totally disabled from performing any and all types of work.

On November 30, 1981, Smith filed his claim for disability and disability insurance benefits, alleging onset of disability on August 30, 1981. The claim was denied at the initial level on March 2, 1982, based on a determination by Dr. Dong Lim Cho, who reviewed Smith's records but never examined him. This determination, embodied in the disability determination rationale, expressed the opinion that Smith was capable of "medium work," one of the five classifications [3] of work specified in 20 C.F.R. § 404.1567, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...."

The disability determination rationale also evaluated the nature of Smith's work:

The work as an owner and operator of an appliance store was performed for 25 years from 1956 to 1981. This job has current vocational relevance because it was performed for a significant period of time in the relevant past and was performed for substantial wages. The claimant indicates that this work required the claimant to be responsible for the full operation of the store, including the selling, servicing, and repairing of televisions and appliances. The claimant had to stand and walk 5 hours in a day and sit 3 hours a day. He had to lift tool boxes weighing 40 to 50 pounds. Since the demands of the claimant's past work, as described by the claimant, do not exceed current residual capacity, the claimant can be expected to return to this work.

(Tr. 86–87).

The disability determination rationale stated that this evaluation was based on the Form SSA–3369 prepared by Smith in bringing his claim.

Smith requested reconsideration of his claim but again was denied benefits on June 9, 1982. Subsequently, he sought an administrative hearing, which he received on September 16, 1982. The Administrative Law Judge ("ALJ") denied the claim on January 20, 1983, essentially adopting the conclusions in the disability determination rationale. The ALJ's opinion recited Smith's present ability to do "medium work." Then, in the following passage that tracks the wording of the disability determination rationale, the ALJ concluded

---

**2.** A description of Class III follows: "Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary physical activity causes fatigue, palpitation, dyspnea, or anginal pain." Goldman, Hashimoto, Cook & Loscalzo, *Comparative Reproducibility and Validity of Systems for Assessing Cardiovascular Functional Class: Advantages of a New Specific Activity Scale,* 64 Circulation 1227, 1228 table 1 (1981).

**3.** The four other classifications of 20 C.F.R. § 404.1567 read as follows:

(a) *Sedentary work.* Sedentary work involves lifting no more than ten pounds at a time and

occasionally lifting or carrying articles like docket files, ledgers, and small tools....
(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds....

(d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds....
(e) *Very heavy work.* Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more....

that Smith's past job involved medium work:

> This work as an owner and operator of a television and appliance store was performed for approximately twenty-five years and has current vocational relevance because it was performed for a significant period of time in the relevant past and was performed for substantial wages. The claimant indicates that this work required him to be responsible for the full operation of the store, including selling, servicing, and repairing televisions and appliances. As the claimant performed this job, he had to stand and walk five hours a day and sit about three hours a day. He had to lift tool boxes weighing forty to fifty pounds. Since the demands of the claimant's past work do not exceed his current residual capacity, the claimant can be expected to return to this work....

(Tr. 15).

Smith requested review by the Social Security Appeals Council on February 1, 1983. The request was denied on April 11, 1983, and the ALJ's decision was adopted as the Secretary's final administrative decision. Smith filed the complaint beginning this civil action on June 10, 1983. He filed a motion for summary judgment on December 16, 1983; the Secretary filed a cross-motion for summary judgment on March 20, 1984.

Having been referred the matter by the District Judge, the United States Magistrate issued a memorandum, recommendation, and order that Smith's motion for summary judgment be denied and that the Secretary's motion be granted. The magistrate felt that, as owner and operator of the store, Smith could control the amount of work that he did.[4] Relying on a supplement to the 1966 edition of the *Dictionary of Occupational Titles*, the magistrate decided that, because a store manager was listed as "sedentary work" in this source, the ALJ's decision finding Smith able to return to his former work was supported

by substantial evidence. The district court accepted the magistrate's recommendation and entered judgment for the Secretary on August 23, 1984. Smith filed a notice of appeal on October 9, 1984.

## II.

### STANDARD OF REVIEW

This Court must determine, after reviewing the entire record, whether substantial evidence supports the Secretary's findings. 42 U.S.C. § 405(g). Substantial evidence has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III.

### DISCUSSION

To recover disability benefits, a claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act ("the Act"). *See* 42 U.S.C. § 423(d)(5); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981). Disability, as defined by the Act, is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant meets this burden, and will be considered disabled,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he

---

**4.** The Secretary has implied in her brief on this appeal that this observation by the magistrate is irrelevant in a Social Security disability case. *See* Brief for Appellee at 13.

lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Clarifying the method of deciding Social Security cases, this Court in *Hall v. Harris* discussed the sequential analysis that must be applied by the ALJ to flesh out the above statutory standards. The ALJ must determine the following:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65.

In the present case, the ALJ recognized that Smith was not engaged in substantial gainful activity, thus turning to step 2 of the above analysis—whether he had a severe impairment. The ALJ concluded that Smith did not have a severe impairment within the meaning of 20 C.F.R. pt. 404, subpart P, app. 1, pt. A. §§ 4.00–.01 (categorizing heart diseases). The ALJ thus proceeded to step 4.

As already indicated, the ALJ essentially tracked the findings in the disability determination rationale, first, that Smith was capable of "medium work" and, second,

that his past relevant work fell within this category. These two findings form the crux of the ALJ's ultimate decision that Smith did not meet step 4 of the sequential analysis and, consequently, is not disabled. We can assume for purposes of testing this decision that Smith is presently capable of doing medium work. The question therefore is whether substantial evidence exists, in the entire record, to support the ALJ's decision that Smith's past relevant work is medium work.

The ALJ classified Smith's past relevant work as medium,[5] following the assessment of Smith's past work in the disability determination rationale almost verbatim. The examiners stated that they based this assessment on the Form SSA–3369 filled out by Smith. The form had a section regarding physical activity of a claimant's job, on which Smith indicated that he walked five hours a day, sat three hours a day, and "had to carry his tool box that weighed 40–50 lbs. There was also a lot of pushing and pulling of heavy appliances, such as refrigerators." At the administrative hearing, furthermore, Smith explained in more detail the way that he would service and deliver appliances such as television sets. The disability examiners, and the ALJ with minor variations in wording, found that Smith "had to stand and walk 5 hours in a day and sit 3 hours a day. He had to lift tool boxes weighing 40 to 50 pounds." Even though the information about lifting and carrying appliances was before these decisionmakers, therefore, all of them ignored these critical facts. They gave no reason for doing so.

A recent decision of this Court leaves little doubt that such decisions as the one the ALJ made on Smith's claim should be reversed and remanded. *See Deloatche v. Heckler*, 715 F.2d 148 (4th Cir.1983). In *DeLoatche*, the claimant had worked as a

---

**5.** The magistrate actually grouped Smith's work in the lighter category of sedentary work based on the definition of "store manager" in the *Dictionary of Occupational Titles.* The magistrate apparently did not consider the particular requirements of Smith's job, as this Court's decision in *DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir.1983), requires. *See infra.* The magistrate's opinion thus is more suspect than the ALJ's opinion, which discusses at least some of the particulars of Smith's job.

school social worker during the past relevant work period of fifteen years. She testified that her job involved frequent bending, reaching, and carrying of objects, as well as much walking. Without explanation, the ALJ ignored her testimony and classified her work as "sedentary," concluding therefore that she was not disabled. On appeal, this Court accepted the claimant's testimony and recognized that the description of work appeared instead to come within the "light work" category. This Court thus concluded that the ALJ's finding lacked substantial evidence. The district court's decision accordingly was reversed and remanded so that the Secretary could consider additional evidence of the proper characterization of the claimant's prior work. *See* 715 F.2d at 151; *cf. Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974) (remanding decision that claimant could do light and sedentary work as lacking substantial evidence because Social Security Appeals Council ignored certain evidence of impairments affecting claimant's ability to work); *Vitek v. Finch*, 438 F.2d 1157 (4th Cir.1971) (remanding to district court for entry of an award of disability benefits because Appeals Council ignored medical evidence, particularly from the claimant's treating physician, that his heart condition was disabling; Appeals Council decision thus lacked substantial evidence).

The United States Court of Appeals for the Fifth Circuit has taken a similar position. *See Anderson v. Schweiker*, 651 F.2d 306 (5th Cir.1981). Anderson involved a claimant who had worked as a glazier. According to the information that he gave to doctors, his job required him to lift loads of up to 400 pounds. The ALJ made no findings regarding the nature of the claimant's duties as a glazier, merely classifying his work as "medium work" because it was categorized that way in the *Dictionary of Occupational Titles*. Accordingly, the ALJ concluded that the claimant "retains sufficient residual functional capacity for the performance of his usual work." 651 F.2d at 308. The Fifth Circuit rejected this conclusion as unsupported by substantial evidence, reversing and remanding for the

taking of additional evidence on the nature of the claimant's duties as a glazier. *See id.* at 309–10.

■ The ALJ's decision on Smith's claim is deficient for the same reasons that the decisions in *DeLoatche* and *Anderson* were deficient. The decision, in short, contains a gap in its reasoning. If the ALJ discounted Smith's testimony about lifting and carrying heavy appliances, he needed both to say so and to explain why. *See DeLoatche*, 715 F.2d at 150–51; *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985) (per curiam)(an ALJ has a "duty of explanation" when making determinations about the credibility of a claimant's testimony). Like the claimant in *DeLoatche*, Smith had expressed information about his work that would place it in a higher classification than that found by the ALJ. Just like the ALJ in *DeLoatche*, the ALJ did not explain at all his reasons for classifying Smith's past relevant work in a lower classification than that supported by the claimant's testimony. Therefore, the result on this appeal must be the same as in *DeLoatche:* reversal of the district court's judgment and a remand for further consideration.

## IV.

### CONCLUSION

Having exposed the deficiency in the Secretary's decision, we add a few words to clarify our holding and to provide guidance on remand. Our holding in no way should be taken as an indication that all persons who have had heart attacks are thereby rendered disabled. Many people who have had heart attacks still retain the capacity to perform jobs existing in the economy. Expressing no opinion on the merits of this case, we restrict our holding to the failure of the ALJ to make complete findings regarding the nature of Smith's past relevant work.

■ On remand, the ALJ should clarify at least two findings. We have, in detail, explained the necessity for a specific find-

ing on Smith's past relevant work, particularly in light of his testimony about lifting the heavy appliances. The second finding that needs to be made clearer is the classification of work of which Smith was found capable. The disability determination rationale, adopted in essence by the ALJ, classified Smith as capable of medium work, remarking that the treadmill stress test showed Smith able to do this category of work. Nevertheless, Dr. Tse, who tested Smith, described his condition in a manner that casts doubt on his ability to do medium work. *See supra* note 2 and accompanying text. The inconsistency must be explained.

We note that this Court's decision in *DeLoatche* cited with approval the opinion of the United States Court of Appeals for the Second Circuit in *Jock v. Harris*, 651 F.2d 133 (2d Cir.1981). *See DeLoatche*, 715 F.2d at 151. In *Jock*, the court upheld an ALJ's decision that the claimant was not disabled because she could return to her former work as a supermarket cashier. In so finding, the ALJ had reasoned that, although the claimant's previous work as a cashier had required her to stand, many cashier jobs could be performed sitting. 651 F.2d at 134–35. An ALJ, therefore, presumably need not consider a claimant's specific prior job, but rather need only consider whether a claimant can return to his previous work, i.e., his occupation. *DeLoatche* 715 F.2d at 151 (citing *Jock*, 651 F.2d at 135). Regarding Smith's ability to return to his past work, step 4 of the *Hall* analysis, the ALJ thus should consider whether jobs as appliance store managers exist in which heavy lifting is not required.[6]

The Secretary and the claimant may produce further evidence on remand. Should the ALJ decide that Smith has made out his *prima facie* case, the sequential analysis must of course proceed to the fifth and final inquiry outlined in *Hall v. Harris:* "whether the claimant is able to perform other work considering both his remaining

physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." 658 F.2d at 264–65.

For the foregoing reasons, the judgment of the district court is vacated and this case is remanded to the district court with instructions to remand it to the Secretary for further proceedings consistent with this opinion.

VACATED AND REMANDED.

---

**6.** This consideration should, of course, follow clarification of the two findings mentioned in the preceding paragraph.