914 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James MCCALLUM, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-2143.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1990.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges and JORDAN, District Judge.*
 PER CURIAM.
 
 
 1
 Claimant, James McCallum, appeals from a denial of social security disability benefits. McCallum's claim for benefits was predicated upon arthritis in his back and knees and mild chronic obstructive pulmonary disease. An administrative law judge (ALJ) determined that McCallum could still perform his past relevant work as a convenience store operator and cashier.[1] Claimant appealed to the district court where summary judgment was granted in favor of the Secretary.
 
 
 2
 Upon a review of the full record, we agree with the district court that substantial evidence supports the ALJ's decision, and we affirm.
 
 I.
 
 3
 Claimant, who was born in 1925, worked all his adult life until 1985. He worked as an auto spray painter at Chrysler Corporation from 1947 to 1981, when he retired. In 1981, he opened his own small convenience store, which he operated until 1985. His insured status under the Social Security Act expired on December 31, 1986.
 
 
 4
 McCallum's principal complaints are that his back and knees bother him. There is medical support in the record for these complaints, and McCallum has been diagnosed as having moderate arthritis of the lumbosacral spine and mild arthritis of the knees. Although claimant speaks of himself as having emphysema, the most the medical evidence shows is mild chronic obstructive pulmonary disease. Pulmonary function tests reveal only a minimal obstructive lung defect. McCallum makes no claims as to disabling pain. It is undisputed that claimant has no impairment or combination of impairments listed in or medically equivalent to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.
 
 
 5
 The ALJ determined that McCallum could no longer do spray painting work because of his pulmonary problems, but concluded he still maintained the residual functional capacity to do his past relevant work as a convenience store operator. In reaching this conclusion, the ALJ had the benefit of an analysis by a vocational expert (VE) who testified at the hearing.
 
 
 6
 The medical evidence supports this conclusion by the ALJ. Only two doctors examined claimant. His treating physician, Dr. L.F. Swan, had treated claimant over the years and furnished a medical report dated April 30, 1986. Dr. Swan found that despite McCallum's complaints of moderate pain in the lumbosacral area, there was no limitation of motion in the joints or spinal area. Additionally, he was able to heel-toe walk, squat, climb stairs, and get on and off the examining table.
 
 
 7
 In May 1988, claimant was examined by Dr. A. Patel, an internist. McCallum complained of headaches, occasional dizziness, and shortness of breath. McCallum was taking Nalfon, an anti-arthritic drug, and Berocca, a prescription vitamin. He did not use nitroglycerin or any other heart medications. There was no history of acute attacks or shortness of breath requiring treatment, nor was there a history of nocturnal dyspnea. McCallum did not use any sprays or inhalers. He also stated that he had arthritis in his knees and lower back, with occasional trouble standing or getting up. The back pain did not radiate into his legs, however.
 
 
 8
 Dr. Patel noted that, despite McCallum's complaints of pain on rising from the couch, McCallum did not use a cane, he had no significant difficulty getting on and off the examining table or dressing and undressing, and he was able to walk downstairs for examination. He performed flexion-extension of his right knee to 90 degrees out of 120 and of his left knee to 60 degrees. Lumbar flexion-extension was to 35 degrees out of 90, lateral flexion was 10 degrees out of 20 bilaterally, and rotation was 10 degrees out of 30 bilaterally. There was no knee effusion, no quadriceps weakness or wasting, and no significant edema. Straight leg raising was negative, and there was no thrombophlebitis, leg ulcers, or calf tenderness. Dr. Patel found lumbar myofascitis of McCallum's back, ruling out degenerative arthritis. Degenerative arthritis was diagnosed as affecting mostly the left knee. On March 6, 1987, x-rays of McCallum's left knee revealed osteoarthritic changes with no acute fracture, as well as calcifications in the popliteal fossa and in the suprapatellar bursa. The impression was of unspecified degenerative changes in the left knee.
 
 II.
 
 9
 McCallum also argues that he cannot perform his past relevant work at the convenience store because he has leased the store to someone else. He further argues that he could not perform his past work elsewhere because, as the owner of his own store, he could rest whenever he felt the need. Although the record does not contain evidence of a lease or sale of the store, we accept claimant's representations on appeal. We note, however, that he still owned the store on December 31, 1986, when his insured status expired, which is the date critical to our evaluation. As to working elsewhere, the law in this circuit is that a claimant must show that he can perform neither (1) the actual functional demands and job duties of a particular past relevant job, nor (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Studaway v. Secretary of Health & Human Services, 815 F.2d 1074, 1076 (6th Cir.1987). We are unable to conclude from the record before us that the exertional demands of working in a non-owned convenience store or similar setting would exceed claimant's capabilities.
 
 
 10
 The medical evidence as well as the claimant's own description of his day-to-day activities convince us that substantial evidence supports the Secretary's denial of benefits.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable Leon Jordan, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Actually, an ALJ made this determination on two different occasions. The tape of the first hearing was blank, and this claim was remanded for a second de novo hearing